UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

D.B.I. WASTE SYSTEMS, INC., )
 )
      Plaintiff, )
 )
v. ) C. A. No.:
 )
UNITED STATES OF AMERICA )
DEPARTMENT OF VETERANS AFFAIRS; )
MASS HAULING AND RECYCLING; and )
UNITED STATES GENERAL ACCOUNTING OFFICE [GAO] )
 )
      Defendants. )

04cv10768 DPW

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiff D.B.I. Waste Systems, Inc. ("DBI"), submits this memorandum of law in support of its application for a Temporary Restraining Order and a Preliminary Injunction against Defendant United States Department of Veterans Affairs (the "VA") and Mass Hauling and Recycling. As demonstrated below, the VA wrongfully decided an award of a contract to Defendant Mass Hauling ("MHR"). DBI will be irreparably harmed if it is not awarded the contract as DBI is currently performing the services called for under the contract at issue, As MHR is not, and never has performed the contract at issue, there is no risk of harm to the public interest and less to MHR than DBI, if MHR is enjoined from beginning work under the contract.

**I.   STATEMENT OF THE CASE**

The following facts are relevant to DBI's application for preliminary injunction and are supported by the sworn Verified Complaint with Affidavits (attached hereto).

Pursuant to Solicitation Number: IFB523-120-03 (the "Solicitation"), the VA invited bids on a contract to supply all labor, materials, tools, transport, travel, equipment and supervision to conduct pick-up and removal of solid waste materials from the VA's healthcare facility located at 150 South Huntington Avenue in Boston, Massachusetts (the "Facility") among (3) other facilities—a multipurpose Bid. The base period of the bid was October 1, 2003 through September 30, 2004, with the four years immediately following the base period as option years (the "Contract").[1]

Since 1994, DBI has been successfully providing the service required by the Contract, namely the removal of solid waste materials. Indeed, DBI is currently still performing those services to the Facility, even though work under the new Contract was to have commenced on October 1, 2003, pursuant to VA Regulations.

DBI duly submitted its offer ("DBI's Bid") in response to the Solicitation. MHR also submitted its offer ("MHR's Bid"), as did other bidders, September 29, 2003 at 2:00 PM. Copies of DBI's Bid and as far as DBI can determine MHR's Offer are attached to the Verified Complaint as Exhibits H-4 and H-5 respectively. As part of its Offer, DBI included a provision that the VA would receive a 2% discount on the total due each month for prompt payment of each billing month, which discount DBI has given the VA since 1994, even in months when the VA's payment was made DBI more than 30 days after the due date. DBI understands this cannot be considered in competitive bidding but it is surely in the "Public Interest." DBI also included

---

[1] The Solicitation invited bids for other VA facilities in West Roxbury and Brockton, Massachusetts. Offerors were permitted to bid on services for any of the three facilities. DBI submitted a bid for only the Jamaica Plain Facility. DBI is not aware of how many of the eight (8) other bidders, beside MHR, submitted a bid on the West Roxbury facility. Each bidder was allowed to bid on one or any combination of the three facilities. Of the ten (10) bids in total each was some 100 pages in length.

with its Bid a memorandum that contractually guaranteed its prices, stating that "ALL FLAT RATE PRICES ARE FIRM AND FIXED FOR THE BASE PERIOD AND ALL OPTION YEARS" (*emphasis added*) and that "THERE WILL NEVER BE AN INCREASE OF ANY KIND TO THE V.A. THROUGHOUT THE TERM OF THIS CONTRACT, EVEN IF DUMPING FEES ARE INCREASED FOR [DBI]."

MHR's Bid did not.

On September 29, 2003, at 2:00 PM the Contracting Officer for the VA opened the bids.

A representative of DBI had delivered the Bid for DBI and attended the bid opening. At that time the Contracting Officer did not award the contract to any bidder. After the bids were opened the Contracting Officer did not state who had won the contract but that MHR's seemed the apparent low bid and the Award would be taken under advisement at that time and made at a later date. (Affidavits, Exhibit J-1 and Affidavit attached to Exhibit I to the Verified Complaint.)

By Memorandum dated November 24, 2003, received November 25, 2003, by DBI the VA announced that it would award the Contract to MHR, noting that MHR had submitted the apparent low price of $734,970.00, which was $6.00 per year less than "the second low price" submitted by DBI. Thus, for the first year of the five potential contract years, MHR offered a price of $146,994.00 without a guarantee of no price increase, whereas DBI offered an annual price of $147,000.00.

DBI timely filed a Bid protest (the "Protest") with the General Accounting Office (the "GAO") on December 4, 2003, which was within ten (10) days of the receipt, November 26, 2003, by DBI of the November 24, 2003 Memorandum of Award. (A copy of the Protest is attached as Exhibit B to the Verified Complaint.) In the Protest, DBI argued, among other things: (1) that the six dollar difference between its bid and MHR's represents .004% of DBI's

3

$147,000 annual Contract price and is thus *de minimis*; (2) that the analysis should have turned to the issue of the bidders' past performance, about which DBI submitted information as part of its Offer but MHR did not; and (3) that DBI's continued performance of the work called for by the Contract, which it has been performing since 1994, would better serve the public interest.

Most importantly, in the Protest, DBI also stated: "DBI believes that Mass Hauling's Offer may have been defective in one or more respects, potentially disqualifying that Offer." Thus, as part of DBI's timely Protest, DBI put the GAO and the VA on notice that it was challenging MHR's Bid as deficient.

In the Protest, DBI indicated that it had requested documents from the VA from which DBI expected to make additional facts available supporting its claims. Counsel for DBI sent a request, via facsimile and regular mail, to the VA on December 4, 2003 asking for all relevant documents. Prior to that the documents had been requested orally by counsel and representatives of DBI. Not having received a copy of MHR's Bid, or any other documents, eight days after the written request, counsel for DBI telephoned the VA on December 12, 2003 and retrieved a copy of only MHR's "Bid" by messenger later that day.

In the meantime, by decision dated December 10, 2003, received December 11, 2003, the GAO dismissed the Protest, *sua sponte*, on the ground that MHR had submitted the lowest bid (the "December Dismissal"). A copy of the December Dismissal is attached to the Verified Complaint. The VA had not provided any documents responsive to DBI's Protest as of the time of the December Dismissal.

On December 20, 2003, DBI timely filed a Request for Reconsideration of the December Dismissal based on new information, learned after the filing of the Protest, concerning defects in MHR's "Bid." (A copy of the Request for Reconsideration is attached as Exhibit D to the

Verified Complaint.) Counsel for DBI first reviewed MHR's "Bid" on December 12, 2003 and timely filed the Request for Reconsideration within ten days of receipt of the December 10th Dismissal. As set forth in the Request for Reconsideration, the review revealed that the Bid was inconsistent, confusing, indeterminate and ultimately nonresponsive to the Solicitation. Among other material deficiencies, MHR responded to requests for Contract Line Item Numbers alternately with blanks, dashes and zeroes. The Request for Reconsideration argued that, under GAO decisions, as well as general principles of contract law, a bid that fails to include a price for each item required by the invitation for bid must be rejected as nonresponsive, as the omission of prices demonstrates a refusal to be bound legally to provide these items. (See Exhibit D.)

On January 8, 2004, the GAO issued an Acknowledgment of Protest, apparently deeming DBI's Request for Reconsideration a new bid protest. DBI did not request GAO take this position. Sometime in February 2004 (the date is unclear as DBI did not receive a copy of the filing at the time it was dated as filed with the GAO) but on February 17, 2004, the VA submitted a response to DBI's Request for Reconsideration, which apparently was intended to serve as the agency "Report" required by the GAO in bid protests (the "VA Report"). (A copy of the VA Report is attached as Exhibit H to the Verified Complaint.) The VA Report challenged the timeliness of DBI's claim that MHR's Offer was nonresponsive and discussed some of the merits of that claim.

The VA served is Report on DBI containing some documents. It was at this point DBI first learned that the copy of MHR's Bid that the VA had previously provided to DBI on December 12, 2003 was different from the Bid as it existed at the time of the bid opening. Apparently, MHR's Bid as submitted at the bid opening, September 29, 2003, did not have, among other items, the name or address of the bidder in box 17a of the cover sheet, as required

5

by Standard Form 1449. Also nowhere in the bid was MRI indicated as the entity making the Bid. With the identity of the bidder left blank, MHR's Bid did not identify a party with which the VA could enter into a contract.

On February 26, 2004, DBI filed its Comments and Affidavit on the VA's Report. (A copy of DBI's Comments is attached as Exhibit I to the Verified Complaint.) On March 12, 2004, the VA filed an unsolicited written response to DBI's Comments in which the VA admitted that the Contracting Officer had, in fact, altered MHR's Bid subsequent to the bid opening. (A copy of the VA's March 12, 2004 filing is attached as Exhibit J to the Verified Complaint.) On March 22, 2004, DBI filed its response to the VA's March 12, 2004 filing. (A copy of DBI's response is attached as Exhibit K to the Verified Complaint.)

On March 25, 2004, the GAO dismissed as untimely DBI's protest, not concerning the nonresponsiveness of MHR's Offer, on the grounds that DBI knew or should have known of any deficiencies in MHR's bid at the time of the bid opening (the "March Dismissal"). (A copy of the March Dismissal is attached to the Verified Complaint as Exhibit L.) The GAO did not address the merits of DBI's claim that the VA was required to reject MHR's Bid because it was nonresponsive and did not enable the VA to enter into a legally enforceable contract with MHR. In its decision the GAO Agreed "in that Mass Hauling's bid did not contain various information as alleged by DBI, at the time of bid opening."

## II. THIS COURT SHOULD GRANT DBI'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

### A. Legal Standards

#### 1. Standard For Granting Preliminary Injunctions

In order to succeed on a Motion for a Temporary Restraining Order and Preliminary Injunction, a party must prove: "(1) substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is not granted; (3) a favorable balance of the hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest." *EEOC v. Astra U.S.A., Inc.*, 94 F.3d 738, 742 (1st Cir. 1996). "Of these factors, the most essential is a demonstration by the moving party that it is reasonably likely to succeed on the merits of a claim on which the prayer for injunctive relief is based." *American Science and Engineering Inc. v. Kelly*, 69 F. Supp.2d 227, 235 (D. Mass. 1999).

#### 2. Standard For Reviewing Agency Decisions

"When assessing objections to federal contracts or procurements, courts must review the particular agency's decision pursuant to the standards set forth in the Administrative Procedures Act ('APA'), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4). The APA allows Federal districts courts to: 'overturn federal administrative actions that are arbitrary and capricious, and abuse of discretion, or reflect a failure to comply with applicable laws or regulations.'" *American Science*, 69 F. Supp. at 235 (citations omitted).

"While a court generally defers to agency interpretations of its own regulations, it need not do so if the regulatory scheme and the questions under review are within the competence of the reviewing court." *Id.*, at 235 n.13 (citing *Choctaw Mfg. Co. v. United States*, 761 F.2d 609, 619 n.17 (11th Cir. 1985)). In *Aero Corp. v. Department of the Navy*, 540 F. Supp. 180, 206-06

(D.D.C. 1982). "Whatever 'deference' is owed to GAO determinations must not, however, obscure the duty of the courts themselves to judge the legality of procurement decisions. See *Simpson Electric Co. v. Seamans*, 317 F. Supp. 684, 686 (D.D.C. 1970). '[T]he Comptroller General does not claim this his action operates as a legal or judicial determination of the rights of the parties' in a bid protest. *Wheelabrator Corp. v. Chafee*, [455 F.2d 1306, 1313 (D.C. Cir. 1971)]. This Court must review the GAO's decisions, not GAO's judgments on those decisions. See *Rapides Reg'l Med'l Ctr. v. Veterans' Affairs*, 974 F.2d 565, 572 (5th Cir. 1992) (citing McBride & Touhey, 1A *Government Contracts*, at § 7.10) ("the majority of district courts are of the opinion that the decisions of the Comptroller General are advisory only and are not binding upon the court"); *Burroughs Corp. v. United States*, 223 Cl. Ct. 53, 63, 617 F.2d 590 (1980) ("The Court of Claims is not bound by the views of the Comptroller General, nor do they operate as a legal or judicial determination of the rights of the parties.") Accordingly, because its protest is grounded in basic contract law, DBI respectfully submits that this Court's review of the award of the Contract to MHR should be *de novo*.

Admittedly, GAO decisions favor the practice of raising allegations of procurement irregularities when corrective action, if necessary, "is most practicable and, thus, least burdensome on the conduct of the procurement." *Ray Service Co.*, 1984 U.S. Comp. Gen. LEXIS 565, *4 (1984). The GAO has chosen to assert that DBI's substantive claims that the VA wrongfully awarded the Contract to MHR are untimely, so as to dismiss them without considering their merits. As noted above, DBI did assert that there were defects in MHR's Offer in its original protest, which was deemed timely by the GAO. Thus, the VA and the GAO were all put on notice that this would be an issue in the protest. When the details of DBI's claims that MHR's Bid was nonresponsive were set out in its December 20 Request for Reconsideration, a

mere sixteen days after the original Protest filing, the GAO dismissed those claims as untimely. Apparently, prior to the award of a contract, the GAO would have bidders retain counsel to review all the Bids and research all potential claims even before a bidder knows whether or not it has been awarded the contract. It is ironic, to say the least, that federal procurement law would promote such a glaring lack of economy, by involving the federal courts.

This Court should reverse the GAO's dismissal of DBI's bid protest to ensure that the merits of DBI's claims are actually heard and to afford DBI its day in court, in this case where DBI clearly put the concerned parties on notice that it would be challenging MHR's Bid as defective. Further, the instant situation is unlike that in which a problem in the bid solicitation would require beginning again from scratch the entire bidding and contract award process. Here, there is no corrective action necessary other than awarding the contract to DBI, which has already proven its ability to provide the services to the Facility and would only continue business as it is if the Contract were awarded to it. Moreover, because DBI's essential argument is that MHR is not contractually binding itself to perform the services called for under the Contract, the claims at issue in this action do not concern just DBI. Rather, at issue is also whether the Facility, the community it serves and the American taxpayer will be sufficiently protected, which is why the detailed bidding procedures exist in the first place. Surely, the absence of a binding contract should be a reviewable issue at any point during the term envisioned in the contract solicitation.

There is also the issue that the VA has failed to comply with the rules concerning disclosure of documents, so DBI, to this date, still does not know what documents the VA relied upon in erroneously awarding MHR the Contract. DBI's document request, as set forth in the December 4, 2003 letter from counsel for DBI to the VA, seeks a much broader range of

documents than what was included as exhibits to the VA's Report. Contrary to the requirements set forth in the GAO's Acknowledgment and Confirmation of DBI's Request for Reconsideration (deemed a new protest by the GAO), as well as in 4 C.F.R. § 21.3(c), the VA has never indicated whether it has additional, responsive documents (a) that the VA is willing to produce, although the time to do so has long expired, or (b) that the VA is withholding from production, although those should have been identified five days prior to the Report Due date, i.e., by February 4, 2004. Because the VA has never issued a document disclosure, DBI has not been able to file an objection thereto. So, rather than reaching the merits, DBI has been made the victim of timeliness rules, when the VA itself still has not complied with its obligation to disclose all of the documents material to the Contract award or at least identify what it is withholding. The VA's failure is all the more significant in light of the fact that the Contracting Officer saw fit, improperly, to alter MHR's Bid, which raises disturbing questions about preferential treatment accorded to MHR.

**B.    DBI Can Demonstrate A Substantial Likelihood Of Success On The Merits.**

5 U.S.C. § 706 provides, in material part: "The reviewing court shall – . . . (2) hold unlawful and set aside agency action, findings and conclusions found to be – . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (D) without observance of procedure required by law." In this case, the VA failed to act in accordance with law or with observance of procedure required by law. *See generally Scheduled Airlines Traffic Offices, Inc. v. Department of Defense*, 318 U.S. App. D.C. 347 (1996). Accordingly, there is more than a substantial likelihood that DBI can succeed on the merits of its claim that the VA wrongfully awarded the Contract to MHR.

### 1. MHR's Offer Was Nonresponsive

A review of MHR's Bid reveals that it is inconsistent, confusing, indeterminate and ultimately nonresponsive. As such, the contracting officer should have rejected MHR's bid. Preliminarily, the cover page does not include either MHR's telephone number or its Data Universal Numbering System Number. Further, MHR fails to provide its Taxpayer Identification Number or any explanation for this omission. See MHR Bid, Exhibit H-4 to the Verified Complaint, at pp. 63-64.

Further, and most importantly, MHR's Bid did not even have the name or address of it as the bidder in box 17a of the cover sheet, as required by Standard Form 1449, or anywhere else in the Bid. It is black letter contract law that the putative contract documents need to identify the parties which are contracting. With the identity of the bidder here left blank, MHR's Bid did not identify it as a party with which the VA was entering into a contract. As noted above, and most damaging is that DBI eventually learned that the Contracting Officer had improperly filled in portions of the bid that MHR had chosen to leave blank, including but not limited to inserting MHR's name as bidder on March 12, 2004, or shortly thereafter. However, "as a general rule, bids may not be explained or supplemented after bid opening." *Seaward Corp. v. Comptroller General*, 1990 U.S. Comp. Gen. LEXIS 1087, *5 (1990) (citing A.D. Roe Co., 54 Comp. Gen. 271 (1974), 74-2 CPD para. 194). See copies of cover sheet attached hereto.

MHR's Offer is also nonresponsive because of the deficiencies in its SF1449 Schedules. Specifically, page 4 of its Offer is the Schedule for the Base Period: October 01, 2003 through September 30, 2004 for the Jamaica Plain Facility. For Contract Line Item Numbers (CLINs) 001 through 004, the Schedule has dashes for the Unit Price and Total for the Disposal Charge. CLINs 003 and 004 have dashes as well for the Unit Price and Total for the Hauling Charge.

Finally, CLIN 005 has dashes for the Unit Price and Total for the rental of a hydraulic lift.

Page 5 of MHR's Offer contains the Schedule for the VA facility in West Roxbury. In CLINs 009 through 011, MHR has written in amounts for the Hauling and Disposal Charges. For the Rental Fee in CLINS 009 and 010, the Unit Price and Total are identified as 0. That is, the West Roxbury Schedule includes no dashes where numbers would otherwise be. The West Roxbury Schedule has a handwritten X through CLINS 007 through 010, which supposedly indicates that it is not bidding on this site even though all of the figures of its prices are provided, including a subtotal. The VA's March 12, 2004 submission states that the Contracting Officer, in a practice the VA states that it does not approve of, inserted various handwritten X's in MHR's Bid, once again altering MHR's submission.

The Brockton facility Schedule on pages 6 and 7 are blank, and these pages have a large, handwritten X on them, again supposedly indicating that MHR is not bidding on this site. There is also an X on the subtotal line for that site. The bidder, however, is supposed to include the figure for the Base Year Total for its bid. Here, there is an X and a handwritten notation: "NO BID." Thus, MHR has not identified its total price for the base year.

The confusion continues on the Schedule for the Jamaica Plain Facility for Option Year One on page 8 of MHR's Offer. For CLINs 028 through 031, the Schedule has dashes for the Unit Price and Total for the Disposal Charge. CLINs 030 and 031 have dashes as well for the Unit Price and Total for the Hauling Charge. Whereas CLIN 005 has dashes for the Unit Price and Total for the rental of a hydraulic lift, in this schedule, the Unit Price and Total are simply left blank. It is reasonable to conclude that there is, at a minimum, a difference in the price for the rental of the hydraulic lift between the Base Period and Option Year One or that MHR is not obligating itself to provide the rental in the second year..

Page 17 is the Schedule for the Jamaica Plain Facility for Option Year Three. For CLINs 082 through 085, the Schedule has dashes for the Unit Price and Total for the Disposal Charge. CLINs 084 and 085 have dashes as well for the Unit Price and Total for the Hauling Charge. Whereas CLIN 005 has dashes for the Unit Price and Total for the rental of a hydraulic lift, in this schedule, the Unit Price and Total are simply left blank. Again, one cannot know the prices for the CLINs and whether MHR is even obligating itself to perform these services.

The Schedule for Option Year Three for the West Roxbury Facility, again an amended page 9 and crossed out, has a 0 or other number on every line, rather than any dashes or blanks. The Schedule for the Brockton Facility results in pages 19 through 21 again being crossed out, with a small X and "NO BID" instead of an amount for the Option Year Three -Total.

On page 22, the Schedule for the Jamaica Plain Facility for Option Year Four has dashes for the Unit Price and Total for the Disposal Charge in CLINs 109 through 111, and dashes as well for the Unit Price and Total for the Hauling Charge in CLIN 111. The amounts for the Hauling Charge and Disposal Charge for CLIN 112 are simply left blank, thereby not obligating MHR to perform those tasks. Finally, there are dashes for the Unit Price and Total for the rental of a hydraulic lift.

The Schedule for Option Year Four for the West Roxbury Facility, again an amended page 9 crossed out, again has a 0 or other number on every line, rather than any dashes or blanks. The Schedule for the Brockton Facility results in pages 24 through 26 again being crossed out, with a small X and "NO BID" instead of an amount for the Option Year Four - Total.

Thus, MHR has identified cost items alternately as zeroes, dashes and blanks. From just the four corners of the Offer, one can assume that the choice of whether to use a zero, dash or blank was intentional, and that these distinctions are meaningful. Thus, leaving a price amount

blank should mean something different from inserting a 0 or a dash. One cannot know, however, what these distinctions are.

In stark contrast, DBI's Offer clearly identifies DBI as the contracting party. Further, DBI's Offer's Schedules definitively state the prices for each CLIN. Specifically, DBI noted on each of its Schedules that its bid was based on a "FLAT RATE INCLUDING DISPOSAL CHARGES." DBI also identified as 0 the price for renting the hydraulic lift in every schedule. Moreover, unlike MHR, DBI included the price totals for the base period and each of the option years, as required. Further, DBI agreed that the VA would receive a 2% discount on the total due each month for prompt payment within 30 days of each billing month, which discount DBI has given the VA since 1994, even in months when the VA's payment was made more than 30 days after the due date. Finally, DBI included with its Offer the memorandum that contractually guaranteed its prices if DBI were awarded the Contract.

### 2. The VA Was Required To Reject MHR's Offer As Nonresponsive.

"As a general rule, where, as here, an IFB provides that award will be made to the low aggregate bidder, a bid that fails to include a price for every item required by the IFB must be rejected as nonresponsive. *HH&K Builders*, B-232140, Oct. 20, 1988, 88-2 CPD ¶ 379 at 2, *recon. denied*, B-232140.2, Nov. 30, 1988, 88-2 CPD ¶ 537. This rule reflects the legal principle that a bidder who has failed to submit a price for an item generally cannot be said to be obligated to furnish that item. *United Food Servs.*, B-218228.3, Dec. 30, 1985, 85-2 CPD ¶ 727 at 3." *Newfield Constr., Inc.*, 2001 WL 100247 (Comp. Gen.), Feb. 6, 2001 at *2. Certain price omissions in line items "may be corrected in the rare circumstance where the price for the omitted item can be determined from the initial bid submitted." *Id.* (citing *MKB Constructors, Joint Venture*, B-250413.2, June 8, 1993, 93-1 CPD ¶ 441). These cases apply the strict criteria

required for correction of mistakes. *See* Federal Acquisition Regulation § 14.407-3(a). That is, the omitted price could be corrected only because the bid, as submitted, indicated that an error had been made, the exact nature of the error, and the intended price for the bid item." *Newfield Constr., Inc.*, at *2 (citing *MKB Constructors, Joint Venture*, at ¶ 441). In *Newfield*, the lowest bid was ultimately rejected as nonresponsive because the bidder's intention could not be determined from the bid itself. *Newfield*, at *3. While the GAO found that rejecting the winning bid might result in additional cost to the government, "it is well-established that a nonresponsive bid cannot be accepted solely on the basis of its lower price," because doing so "would compromise the integrity of the competitive bidding system." *Id.* (citing *GTA Containers, Inc.*, B-249328, Nov. 3, 1992, 92-2 CPD ¶ 321 at 3).

In *New Shawmut Timber Co.*, 2001 WL 185214 (Comp. Gen.), Feb. 26, 2001, the GAO denied a bid protest, where the bidder did not include a price for a line item and later argued that "in effect" it had bid zero for that line item. *Id.* at *1. The decision stated: "To be responsive, a bid must constitute an unequivocal offer to perform the exact thing called for under the solicitation, such that acceptance of the bid will bind the contractor to perform in accordance with the material terms of the solicitation. *Doug Jones Sawmill*, B-239996, Sept. 19, 1990, 90-2 CPD ¶ 233 at 2. The failure to include a price for a line item evidences a bidder's intent not to be bound or obligated to perform that element of the requirement, and thus generally renders the bid nonresponsive. *Id.*" *New Shawmut*, at *1. The decision notes that New Shawmut's failure to price the line item "was not equivalent to a bid of zero for the item; rather, leaving its bid for that item blank rendered the bid equivocal regarding whether New Shawmut intended to obligate itself to perform that element of the requirement." *Id.* The GAO further observed that nothing on the face of the bid showed that the failure to price the line item was a mistake rather than a

16

business judgment. *Id.* at *2. Thus, the bid was properly rejected as nonresponsive.

As set forth above, MHR's Offer is replete with alternating dashes and blanks for the Schedules for the Jamaica Plain Facility. On the other hand, the Schedules for the West Roxbury Facility include prices and totals for every CLIN. By leaving material terms blank, MHR has chosen not to unequivocally obligate itself to perform under the Contract with respect to the Jamaica Plain Facility.

Federal Acquisition Regulation § 14.408-1(a) provides, in material part: "The contracting officer shall make a contract award . . . (3) to that responsible bidder whose bid, conforming to the invitation, will be most advantageous to the Government, considering only price and the price-related factors (see 14.201-8) included in the invitation." MHR's Offer did not conform to the invitation, in that it was nonresponsive on various, material pricing issues, and, most importantly, did not identify itself as the contracting party. Accordingly, pursuant to applicable law, the contracting officer was not permitted to award MHR the Contract. Rather, the Contract should have been awarded to the incumbent DBI, which came in with the next lowest bid of at most $6.00 more per Contract year. Because the VA failed to act in accordance with law or with observance of the procedure required by law, DBI should prevail on the merits of its claim.

### C. DBI Satisfies The Remaining Criteria For Preliminary Injunction.

DBI will be irreparably harmed if it is not awarded the Contract. *See Logicon, Inc. v. United States*, 22 Cl. Ct. 776, 789-90 (1991) ("Plaintiff will suffer irreparable injury in the form of lost profits if it not awarded the contract.") (citing *Quality Transport Servs. v. United States*, 12 Cl. Ct. 276, 282 (1987)). "No adequate remedy at law is available. An action at law will not avail plaintiff because it could only provide plaintiff with recoupment of bid preparation costs in

17

a suit for damages." *Logicon*, 22 Cl. Ct. at 790 (citing *Essex Electro Engineers, Inc. v. United States*, 3 Cl. Ct. 277, 287 (1983)).

Finally, granting DBI's motion for injunction relief represents a favorable balance of hardships, and fits with, and certainly causes no harm to, the public interest. As noted above, since 1994 DBI has successfully been providing to the Facility the services called for under the Contract. Further, even though the new Contract was to have commenced October 1, 2003, DBI continues to provide those services, some six months into what was to have been the first year of the new Contract. Thus, granting the preliminary injunction will not cause MHR to cease performing work at the Facility. During the pendency of this action, there has been no change regarding DBI's provision of services, and thus there cannot be any harm to the VA or the community it serves at the Facility. Further, if this Court permanently enjoins the VA from awarding the Contract to MHR, then DBI, which was deemed the next lowest bidder, would be awarded the Contract. Again, there would be no change in the service provided to the Facility and no harm to the public interest, because DBI has been successfully servicing the Facility for almost a decade.

## III.   CONCLUSION

For all of the foregoing reasons, DBI respectfully requests that this Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction and enjoin the VA from awarding the Contract to MHR, and enjoin MHR from performing any work under the Contract.

PLAINTIFF
D.B.I. WASTE SYSTEMS, INC.

By its attorney,

April 15, 2004

_____
Attorney David J. Hopwood
(BBO #239680)
Cape Cod Office
27 Sabbatt Road
P.O. Box 3918
Pocasset, MA 02559
Telephone: (508) 563-7654
Facsimile: (508) 563-7682